**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

MALTA RENEE TATE,                   )
                                    )
            Plaintiff,              )
                                    )
                                    )   Case No. CIV-20-182-KEW
                                    )
COMMISSIONER OF THE SOCIAL          )
SECURITY ADMINISTRATION,            )
                                    )
            Defendant.              )

## OPINION AND ORDER

Plaintiff Malta Renee Tate (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that she was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience,

engage in any other kind of substantial gainful work which exists

in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social

Security regulations implement a five-step sequential process to

evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is

limited in scope by 42 U.S.C. § 405(g). This Court's review is

limited to two inquiries: first, whether the decision was supported

by substantial evidence; and, second, whether the correct legal

standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164

(10th Cir. 1997) (citation omitted). The term "substantial

evidence" has been interpreted by the United States Supreme Court

to require "more than a mere scintilla. It means such relevant

---

[1]      Step one requires the claimant to establish that he is not
engaged in substantial gainful activity, as defined by 20 C.F.R. §§
404.1510, 416.910. Step two requires that the claimant establish that
he has a medically severe impairment or combination of impairments that
significantly limit his ability to do basic work activities.  20 C.F.R.
§§ 404.1521, 416.921. If the claimant is engaged in substantial gainful
activity (step one) or if the claimant's impairment is not medically
severe (step two), disability benefits are denied. At step three, the
claimant's impairment is compared with certain impairments listed in 20
C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed
impairment or impairments "medically equivalent" to a listed impairment
is determined to be disabled without further inquiry. If not, the
evaluation proceeds to step four, where claimant must establish that he
does not retain the residual functional capacity ("RFC") to perform his
past relevant work. If the claimant's step four burden is met, the burden
shifts to the Commissioner to establish at step five that work exists in
significant numbers in the national economy which the claimant – taking
into account his age, education, work experience, and RFC – can perform.
Disability benefits are denied if the Commissioner shows that the
impairment which precluded the performance of past relevant work does not
preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d
748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 62 years old at the time of the ALJ's decision. She completed a GED and worked in the past as a retail store manager. Claimant alleges an inability to work beginning on November 1, 2015, due to limitations resulting from depression, anxiety, back/arm injury, incontinence, hemochromatosis, liver damage, vision disturbances, and a right foot injury.

## Procedural History

On December 12, 2016, Claimant protectively filed an application for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the

6:20-cv-00182-KEW   Document 19   Filed in ED/OK on 09/27/21   Page 4 of 11

Social Security Act. Claimant's applications were denied initially and upon reconsideration. On August 10, 2018, ALJ Lantz McClain conducted an administrative hearing by video. The record was left open after the hearing and ALJ McClain, believing the record was complete, issued a decision on September 14, 2018. However, not all the evidence was in the record, which resulted in ALJ McClain withdrawing his decision. On September 30, 2019, a supplemental video hearing was held in Tulsa, Oklahoma. Claimant testified from Muskogee, Oklahoma. On November 14, 2019, ALJ McClain entered an unfavorable decision. Claimant requested review by the Appeals Council, and on April 16, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work.

### Errors Alleged for Review

Claimant asserts the ALJ committed error because his assessment of Claimant's RFC was legally flawed and not supported by substantial evidence.

**RFC Assessment**

In his decision, the ALJ found Claimant suffered from severe impairments of hemochromatosis, history of surgery on the right foot, coronary artery disease, degenerative disc disease, peripheral neuropathy, and sleep apnea. (Tr. 13). He determined Claimant could perform a full range of light work, as Claimant was able to occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk at least six hours in an eight-hour workday, and sit at least six hours in an eight-hour workday. (Tr. 19).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform her past relevant work as a retail store manager, as the job is generally performed. (Tr. 29-30). As a result, the ALJ concluded Claimant was not under a disability from November 1, 2015, through the date of the decision. (Tr. 30).

Claimant first argues that the ALJ conduced a selective review of the evidence, as a complete discussion would have yielded the inclusion of mental limitations in the RFC. Although Claimant asserts the ALJ should have found her mental impairment severe, she concedes that any error at step two is harmless because the ALJ found other impairments severe at step two and proceeded through the sequential evaluation process. She contends, however, the ALJ failed to account for evidence which showed she repeatedly

appeared tearful and depressed at medical visits, her physicians' notations that she was sad, exhibited a tearful mood, and had fleeting but chronic suicidal thoughts, and her use of psychotropic medications from 2016 through late 2019.

The ALJ determined Claimant's mental impairment did not cause more than a minimal limitation in her ability to perform basic mental work activities. He considered the broad functional areas of mental functioning and determined Claimant had mild limitations in the areas of understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (Tr. 15). In making these determinations, he considered the evidence that Claimant presented as mildly depressed and tearful at times, had symptoms of depression, exhibited sad, tearful mood with some thoughts of suicide, and became tearful when talking about her problems. However, he also discussed evidence of a negative depression screening, prognosis with treatment "as very good," and notations that Claimant was taking medication for her depression. He considered findings of Claimant's appropriately functioning thinking, communication, attention, and concentration, findings of normal memory, normal knowledge base, normal thought/perception, normal attention/concentration, intact judgment, and good insight/motivation, and findings that Claimant had a full range of affect and reacted to positive comments. (Tr. 15-16). The ALJ

correctly noted that mild limitations identified for the mental areas of functioning were merely used to rate the severity of impairments at steps two and three and were not a mental RFC. (Tr. 17).

The ALJ also considered evidence of Claimant's mental impairments when formulating the RFC. He noted that a history of depression was reported in June of 2016. (Tr. 22, 534). By December of 2016, it was noted Claimant had complaints of symptoms of mental status irritability. (Tr. 23, 553). At an examination at the Mayo Clinic in October of 2018, upon physical examination, it was also noted that Claimant showed "sad mood, flattened affect, tearfulness[.]" She was diagnosed with major depressive disorder. (Tr. 25, 1190-92). At a follow-up exam later in October of 2018, Claimant was alert and fully oriented with normal mood and affect. (Tr. 25, 1240). Claimant continued to complain of increasing depression from November of 2018 through April of 2019. (Tr. 25-26, 1698-1711).

The ALJ considered the opinion evidence, including the opinions of the non-examining agency psychologists. He noted they determined Claimant's mental impairment was severe and imposed some mental limitations. The ALJ, however, found the assessments entitled to little weight because they were inconsistent with other findings. Specifically, the ALJ relied upon findings from Claimant's psychotherapy sessions in September of 2019, with

clinical social worker Jordan Westbrook, LCSW. He noted Claimant's description of her mood and daily activities did not match her reporting of symptoms associated with anxiety and depression, and she remained very involved in activities. (Tr. 28, 1872). Based upon this and other evidence in the record, including mental status examinations with mostly normal findings, the ALJ again reiterated that Claimant's mental impairment was nonsevere, and he did not include any mental limitations in the RFC. (Tr. 29, 587-88, 1535-44, 1713-31, 1870-96).

No error is found, as the ALJ's decision demonstrates that he did not simply disregard Claimant's mental impairment when formulating the RFC. The Court will not re-weigh the evidence or substitute its judgment for that of the ALJ. *See Casias*, 933 F.2d at 800; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Moreover, Claimant argues the ALJ failed to account for her use of a cane in the RFC assessment. She argues that although the ALJ made references in his decision to her use of a cane, he failed to make findings that specifically addressed whether she would need to use a cane while working. Claimant testified at her initial hearing in August of 2018 and again at the supplemental hearing in September of 2019 that her podiatrist had prescribed her a cane because of problems with her feet and because she was losing her balance and falling. (Tr. 19, 62, 83, 89-90).

The ALJ determined Claimant could perform a full range of light work. When discussing the medical evidence in his RFC assessment, the ALJ acknowledged Claimant's use of a cane. For example, Claimant presented with a cane at her consultative psychological examination with Gail Poyner, Ph.D., on April 13, 2017. Dr. Poyner noted Claimant "walked with a cane upon which she appeared somewhat reliant." (Tr. 16, 587-88). At a physical examination on November 30, 2017, it was noted Claimant walked with a cane, although her range of motion was normal with no pain. (Tr. 24, 909). She also used a cane at a visit with a chiropractor in October of 2018 (Tr. 25, 1524), and again in April of 2019 at the Henryetta Family Care Clinic. (Tr. 26, 1698). At another examination in April of 2019, Claimant presented using a cane to walk, but she ambulated with a wide-based gait and could heel and toe walk and perform a tandem gait. Her lower extremities had intact sensation, no pain, and normal strength. (Tr. 26, 1668, 1674). The ALJ noted that the degree of lower extremity pain and restricted gait alleged by Claimant was not consistent with the objective findings of the examination. (Tr. 26). He determined Claimant was not limited to a degree greater than light work. (Tr. 27).

When determining that Claimant's statements about the intensity, persistence, and limiting effects of her symptoms were not fully consistent with the objective medical evidence of record,

the ALJ specifically addressed Claimant's use of a cane. He noted
her physical examination with consultative examiner Chris Sudduth,
M.D., on August 11, 2017, wherein Claimant's gait was described as
symmetric and steady, and she presented without an assistive
device. Claimant could perform tandem walking, but she was unable
to walk on heels and toes. Dr. Sudduth concluded she had
"absolutely no physical impairment." (Tr. 27, 598-606). The ALJ
also relied upon evidence from an examination in July of 2018,
wherein Claimant presented as symptomatic, but she was observed as
"completely ambulatory." (Tr. 27-28, 713). He further discussed an
examination in March of 2019, wherein it was noted Claimant walked
with a cane (Tr. 28, 1643), but that a physical examination from
September of 2019 was normal. (Tr. 28, 1867-68). The ALJ concluded
that Claimant's symptoms were "less likely to reduce her capacities
to perform work-related activities to a greater degree than the
full range of light exertion work." (Tr. 28).

Here, the Court finds no error because the ALJ addressed
Claimant's use of a cane in the decision and provided an
explanation for why he did not include it in the RFC assessment.
He was not required to adopt a hypothetical question posed to the
VE that did not include all the limitations he ultimately included
in the RFC. See *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir.
1990) (finding that in positing a hypothetical question to the VE,
the ALJ need only set forth those physical and mental impairments

accepted as true by the ALJ); *see also Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (finding that the hypothetical questions to the VE need only reflect impairments and limitations borne out by the evidentiary record).

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED.**

IT IS SO ORDERED this 27th day of September, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

11